*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* Guardianship of BR.

CHRISTINA RICE, Guardian of BR, a legally protected person,

UNPUBLISHED
September 15, 2025
1:45 PM

Petitioner-Appellee,

v

No. 373112
Washtenaw Probate Court
LC No. 24-000435-DD

BR,

Respondent-Appellant.

Before: WALLACE, P.J., and RIORDAN and REDFORD, JJ.

PER CURIAM.

Respondent, BR, appeals as of right the probate court's order appointing Christina Rice as his partial guardian regarding BR's medical needs, mental health, finances, and placement.[1] We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

This case arises from a petition for partial guardianship of BR, a 42-year-old man diagnosed with cerebral palsy, epilepsy, and schizoaffective disorder. BR suffered from

---

[1] After BR filed his claim of appeal in this case, he moved to modify the terms of the guardianship. The probate court granted the motion and modified the partial guardianship to remove power over financial and mental health decisions. The trial court left the guardianship over medical and placement decisions intact. Because BR's decisions regarding his finances and mental health are no longer subject to guardianship, we limit our review to the guardianship over medical and placement decisions. See *TM v MZ*, 501 Mich 312, 317; 916 NW2d 473 (2018) (explaining an issue becomes moot when a judgment "cannot have any practical legal effect upon a then existing controversy") (quotation marks and citation omitted).

complications arising from a premature birth and was first diagnosed with epilepsy at age 12. The petition was filed by Rice, who is BR's sister. The petition stated that BR's disabilities substantially limited his ability for self-care, independent living, and economic self-sufficiency. The petition also stated that BR was unable to make informed medical decisions. Rice sought to act as guardian over BR's finances, personal care, hygiene, medication, and travel.

At the first hearing regarding the petition, Rice testified that BR had left a rehabilitation facility against medical advice and subsequently suffered a fall as the result of taking old medication, leading to hospitalization. Rice further testified that she was concerned BR's father influenced him to leave the rehabilitation facility and was financially abusing him. BR objected to placement in a partial guardianship, testifying that he had lived independently for 20 years. The trial court appointed Rice as temporary guardian for financial, placement, and medical decisions until July 19, 2024, and ordered an evaluation of BR's developmental disabilities. Sharon O'Bryan, a licensed psychologist, conducted the assessment, which indicated borderline intellectual functioning and limitations in self-care, and recommended guardianship for medical, financial, and placement decisions.

At a hearing in July 2024, O'Bryan testified that, although BR could function in many ways, his disabilities required support in specific areas and recommended placement in a partial guardianship. After O'Bryan testified, BR requested another psychological assessment. The hearing was adjourned so that BR could retain legal counsel. At the September 2024 hearing, BR had not retained counsel. His appointed counsel explained that the parties reached an agreement for guardianship regarding financial, medical, mental health, and placement decisions. The trial court acknowledged the agreement and found clear evidence of BR's developmental disability necessitating guardianship services. Consequently, Rice was appointed as BR's partial guardian for a term of five years, covering medical, mental health, financial, and placement decisions. As previously noted, the guardianship was later limited to medical and placement decisions. This appeal followed.

## II. PRESERVATION AND STANDARD OF REVIEW

BR raises several arguments on appeal that are unpreserved for appellate review. Michigan generally follows the "raise or waive" rule in civil cases, which provides that "a failure to timely raise an issue waives review of that issue on appeal." See *In re Guardianship of AMMB*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 368915); slip op at 2 (quotation marks and citation omitted). An exception to this rule applies for guardianship cases. *Id*. at 3. Therefore, we will review the unpreserved arguments.

Generally, we review "for an abuse of discretion the trial court's dispositional rulings concerning guardianship. The court abuses its discretion when its decision falls outside the range of reasonable outcomes." *Id*. at 2 (quotation marks and citation omitted). We review for clear error the trial court's findings of fact. *In re Guardianship of Redd*, 321 Mich App 398, 403; 909 NW2d 289 (2017). "A factual finding is clearly erroneous when this Court is left with a definite and firm conviction that a mistake has been made." *Id*. (quotation marks and citation omitted).

We review unpreserved issues in guardianship proceedings for plain error affecting substantial rights. *In re Guardianship of AMMB*, ___ Mich App at ___; slip op at 3. To establish plain error warranting reversal:

> 1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) the plain error affected substantial rights, and 4) once [an appellant] satisfies these three requirements, an appellate court must exercise its discretion in deciding whether to reverse. Reversal is warranted when the plain, forfeited error seriously affected the fairness, integrity or public reputation of judicial proceedings. [*Id*. (quotation marks and citation omitted; alteration in original).]

Finally, we review de novo questions of statutory interpretation. *Id*. at 2.

III. ANALYSIS

BR's first unpreserved argument is that the trial court erred by not ensuring that BR knowingly and voluntarily consented to the guardianship. We disagree.

BR cites *In re Ferranti*, 504 Mich 1, 20-21; 934 NW2d 610 (2019), and *In re Pawloski, Minors*, ___ Mich App ___, ___; ___ NW3d ___ (2025) (Docket No. 372145); slip op at 4-6, for the proposition that stipulations in guardianship proceedings must be knowing and voluntary. However, those cases concern the ability of a parent in a proceeding to terminate parental rights to knowingly and voluntarily plea to one or more of the original allegations in the petition. MCR 3.971(B) and (D). See *In re Ferranti*, 504 Mich at 20-21. The operative court rules in those cases, MCR 3.971(B) and (D), do not apply to adult guardianship proceedings. MCR 3.901(B)(5).

Instead, a trial court may enter the respondent into a guardianship without his or her knowing and voluntary consent. Under MCL 330.1628(2), the trial court must make reasonable efforts to question the respondent as to his or her preference for who should be appointed guardian before appointing a guardian, and give the respondent's expressed preference "due consideration." This statutory requirement recognizes that there will be cases in which a guardianship is necessary but the respondent lacks the capacity to knowingly and voluntarily consent to the guardianship or the respondent does not wish to be placed in a guardianship.

In this case, the record shows that the trial court found by clear and convincing evidence that BR was developmentally disabled and required a partial guardianship. BR was present during all the proceedings in the trial court and made his preferences known, both directly or through his counsel with whom BR appears to have spoken with frequently given respondent counsel's statements on the record. The trial court made the decision that BR needed a guardian on the basis of the court's own findings of fact, not BR's agreement to a guardianship. Accordingly, the trial court did not err by ordering the appointment of a guardian without BR's express knowing and voluntary consent.

BR's next argument is the preserved argument that the trial court erred by not providing an independent assessment after BR requested another assessment on the record. We disagree.

A petition for appointment of a guardian for an individual with a developmental disability must be accompanied by a report that describes the nature and type of the respondent's disability

and an evaluation of the respondent's mental, physical, social, and educational condition; adaptive behavior; and social skill. MCL 330.1612(1). If the petition is not accompanied by such a report, then the court must order an appropriate evaluation and a report of the results of that evaluation at public expense. MCL 330.1612(3). A respondent has the right to an independent evaluation, either at his or her own expense, or at the expense of the state if the respondent is indigent. MCL 330.1617(6).

The petition in this case was not accompanied by a report. Accordingly, the trial court ordered O'Bryan to complete an assessment of BR and produce a report at public expense. MCL 330.1617(6) states that a respondent is entitled to "*an* independent evaluation" at public expense, suggesting only a single evaluation. (Emphasis added.) Although the indefinite article "an" reflects a "generalizing force," see *Barrow v City of Detroit Election Comm*, 301 Mich App 404, 414; 836 NW2d 498 (2013), the context nonetheless makes it clear that the Legislature contemplated only a single evaluation. If the Legislature had contemplated requiring multiple evaluations, it would have stated so by using the plural "evaluations" instead of the singular "evaluation." Instead, the fact that a respondent may secure "an independent evaluation" supports the conclusion that only a single evaluation was intended.

BR received an evaluation from O'Bryan. Although the trial court did not deny BR's request for another assessment on the record, BR was not entitled to an additional evaluation at public expense. Furthermore, there is no indication on the record that the trial court denied BR the ability to acquire a second evaluation at his own expense. Therefore, the trial court did not err by not granting BR a second evaluation.

BR also argues that O'Bryan's evaluation of BR and the accompanying report were not "independent" or credible because Rice assisted the evaluation. BR suggests that Rice may have unduly influenced BR and that BR's request for a new assessment may have been because of his desire to have an assessment completed without Rice present. "It is well-established, however, that we will defer to the probate court on matters of credibility, and will give broad deference to findings made by the probate court because of its unique vantage point regarding witnesses, their testimony, and other influencing factors not readily available to the reviewing court." *In re Guardianship of Redd*, 321 Mich App at 412 (quotation marks and citation omitted). O'Bryan, Rice, and BR all testified before the probate court, giving it the opportunity to assess each witnesses' credibility. We find no error as to this ground.

BR also argues that O'Bryan did not "testify" about her report and evaluation of BR because O'Bryan was not placed under oath. The trial court cannot appoint a guardian without the testimony of the person who prepared the report required under MCL 330.1612 or the testimony of at least one person who performed an evaluation that served at least in part as the basis of the report. MCL 330.1617(5). The record shows that O'Bryan was placed under oath before she testified. We, therefore, find no error with her subsequent testimony from that hearing.

Lastly, BR argues that the record was insufficient to support the trial court's factual finding that clear and convincing evidence proved that BR was developmentally disabled and required a partial guardian. We disagree.

MCL 330.1618 provides that the trial court must make certain factual findings on the record:

> (1) The court, at a hearing convened under this chapter for the appointment of a guardian, shall do all of the following:
>
> (a) Inquire into the nature and extent of the general intellectual functioning of the respondent asserted to need a guardian.
>
> (b) Determine the extent of the impairment in the respondent's adaptive behavior.
>
> (c) Determine the respondent's capacity to care for himself or herself by making and communicating responsible decisions concerning his or her person.
>
> (d) Determine the capacity of the respondent to manage his or her estate and financial affairs.
>
> (e) Determine the appropriateness of the proposed living arrangements of the respondent and determine whether or not it is the least restrictive setting suited to the respondent's condition.
>
> (f) If the respondent is residing in a facility, the court shall specifically determine the appropriateness of the living arrangement and determine whether or not it is the least restrictive suited to the respondent's condition.
>
> (2) The court shall make findings of fact on the record regarding the matters specified in subsection (1).

The trial court's order appointing a guardian states that findings of fact were more fully stated on the record regarding the factors set out in MCL 330.1618(1). When making its findings of fact on the record regarding BR's disability and functional capacity, the trial court said:

> When we were last here we took testimony from Ms. O'Bryan who prepared the report and formed evaluations serving as a basis for that report will find does show by clear and convincing evidence that [BR] is an individual with developmental disability and requires guardianship services.
>
> There were many things he can do himself, but he does need assistance in the area of medical, mental health, financial and placement.

We agree with BR's argument that these findings of fact are "conclusory" and do not satisfy the statutory requirements of MCL 330.1618. The trial court, therefore, erred by not making sufficient findings of fact on the record. However, the trial court's error does not warrant reversal if the error did not affect the outcome of the proceedings. See *In re Guardianship of AMMB*, ___ Mich App at ___; slip op at 3, 9.

Although the trial court's findings of fact were minimal, the record as a whole is sufficient for appellate review of whether the trial court's conclusions were supported by clear and convincing evidence. The testimonies of Rice and O'Bryan, coupled with the report,[2] clearly and convincingly show that BR's developmental disabilities impaired his ability to handle certain aspects of his own care safely and consistently. Rice testified that she initiated the petition after BR left his placement in a rehabilitation facility against medical advice. After checking out of the rehabilitation facility, BR took an old medication he should not have and suffered a fall. BR had other medication that he could not administer on his own. Emergency service providers were initially unable to enter the home and assist him because the door was locked and he was alone. Rice testified that BR needed maximum support to walk, transfer, and use the bathroom and that he was reliant on others to shop, cook, attend his appointments, and keep his medication stocked. Additionally, O'Bryan's report indicated that BR had borderline intellectual functioning and was unable to accurately and adequately care for himself without the assistance of others. The report concluded that because of deficits in both his cognitive and adaptive functioning, a partial guardianship was appropriate.

BR was shown to be reliant on family help to manage his daily life, and, although he could function to a degree without assistance, BR lacked the capacity to consistently and effectively care for himself and manage his medical care and placement. Therefore, the trial court's findings that BR was developmentally disabled and had a need for a partial guardian to assist with BR's medical care and placement were not clearly erroneous. The fact that the trial court did not make more specific findings of fact on the record as required by MCL 330.1618 did not affect the outcome of the proceedings, see *In re Guardianship of AMMB*, ___ Mich App at ___; slip op at 9; more thorough findings of fact would have doubtlessly also resulted in the trial court ordering a partial guardianship.

The trial court did not abuse its discretion by ordering the appointment of a partial developmental disability guardianship for BR.

Affirmed.

/s/ Randy J. Wallace
/s/ Michael J. Riordan
/s/ James Robert Redford

---

[2] BR further argues that insufficient evidence supported the trial court's findings of fact because O'Bryan did not testify specifically to the report's contents and the report was not admitted into evidence. However, MCL 330.1612(4) provides that the report prepared "shall not be made part of the public record of the proceedings but shall be available to the court or an appellate court . . . ." A trial court's factual findings are sufficient if it appears that the trial court was aware of the factual issues and has applied the law correctly, and no further explanation is necessary for appellate review. *In re Cotton*, 208 Mich App 180, 183; 526 NW2d 601 (1994). The report was filed with the trial court and made available for this Court. The record shows that the trial court was aware of the report when it made its findings of fact.