*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# S T A T E   O F   M I C H I G A N

# C O U R T   O F   A P P E A L S

LISA MARIE NEILSON,

        Plaintiff,

v

BOARD OF STATE CANVASSERS, SECRETARY
OF STATE, and BUREAU OF ELECTIONS

        Defendants,

and

BONNIE BOVEE,

        Amicus Curiae.

FOR PUBLICATION
June 17, 2024
2:30 p.m.

No. 371256

Before: PATEL, P.J., and YATES and FEENEY, JJ.

PER CURIAM.

Plaintiff, Lisa Marie Neilson, seeks a writ of mandamus to compel defendant, the Board of Canvassers (the Board), to certify her as an eligible candidate for the office of Judge of the Court of Appeals for the Second District. She has also moved for immediate consideration of the complaint. The motion for immediate consideration is GRANTED. The complaint is DENIED because plaintiff is unable to establish entitlement to mandamus relief.

## I. FACTS

Many of the pertinent facts are not in dispute. To be certified for the office of judge for the Court of Appeals for District II, plaintiff needed to submit a minimum of 6,200 valid signatures on petition sheets. MCL 168.409b; MCL 168.544f; MCL 168.542. Plaintiff submitted a total of 8,197 signatures by the deadline of April 23, 2024. After an initial facial review of her petitions, it was concluded that she had 7,999 valid signatures.

Two challengers filed challenges to plaintiff's nominating petitions. They alleged that several thousand signatures were invalid. Plaintiff objected to the challenges, and the State Bureau of Elections prepared a staff report. See MCL 168.552(10). The staff report concluded that not

-1-

all of the signatures on the challenged petition sheets were invalid, but many were invalid. In total, the staff report recommended finding that 2,099 signatures out of the original 8,197 signatures were invalid, which left plaintiff with a total of 6,098 valid signatures. Because this was below the threshold amount of 6,200, the staff report recommended that the Board declare plaintiff ineligible to run for office.

Plaintiff received notice of the staff report and analysis and, after a short turn-around time, she objected to the report on May 30, 2024, at approximately 4:00 p.m. The Board was scheduled to meet the next day to discuss the sufficiency of plaintiff's nominating petitions, among other items. Plaintiff's objection to the staff report included attempts at rehabilitating signatures.

During the Board's discussion of plaintiff's petitions on May 31, an issue arose about whether plaintiff's materials that were submitted the day before could be considered. Jonathan Brater, the Director of the Bureau of Elections, indicated that signatures could be rehabilitated by affidavits from petition signers who averred that the signature on a particular petition sheet was indeed the signer's signature. Whether enough signatures could be rehabilitated in this case could not be determined, however, without reviewing the materials that were submitted by plaintiff the day before. More time would be needed to conduct that review.

After considering the matter, the Board voted to table its discussion until it could review the evidence that plaintiff provided the day before the hearing. The Board adjourned and scheduled another meeting for the following Monday, June 3, 2024, to finish its review of the new information.

At 6:39 p.m. on Sunday, June 2, the Board sent an email to plaintiff about her petitions. The email declared that the Bureau of Elections had accepted some of the attempts at rehabilitation, giving plaintiff a total of 6,177 valid signatures. Plaintiff was still 23 signatures short of the 6,200 threshold, however. The email stated that "staff will not accept additional materials on this matter at this time."

Thereafter, at approximately midnight, plaintiff sent an email to the Bureau of Elections with 22 affidavits from voters who averred that they had in fact signed the petition sheets for plaintiff. Those voters' signatures were purportedly invalidated because they did not match the available signatures that were on the qualified voter file. Plaintiff sought to rehabilitate those 22 signatures, which would have still left her one 1 signature short of the threshold necessary to be certified as an eligible candidate.

Plaintiff obtained 4 additional affidavits on the morning of June 3, 2024, before the Board's meeting, giving her a total of 26 new affidavits. The Board was scheduled to resume meeting at 1:30 p.m. that day. Plaintiff asserts that, at approximately 1:25 p.m., the 26 affidavits were hand-delivered to Director Brater.

The minutes from the Board's June 3, 2024 meeting reveal that the Board did not consider the 26 late-filed affidavits. Director Brater stated that there was no formal deadline for the submission of new materials by candidates or challengers, but he acknowledged that, if the information was received immediately before the meeting, it could not, as a practical matter, be reviewed on time. Director Brater also noted that it would take time to review the affidavits and

to conduct follow-up research on the information plaintiff provided, and that that review could not take place in time for the scheduled vote on the matter.

After discussing the matter and listening to argument, the Board found plaintiff's nominating petitions to be insufficient. As a result, plaintiff was not certified as an eligible candidate.

## II. PLAINTIFF'S COMPLAINT AND THE RELIEF SOUGHT

Plaintiff's complaint for writ of mandamus asks this Court to order the Board to certify her as a candidate to appear on the upcoming August 6, 2024 primary ballot.

In response, defendants argue that a primary election will not occur in this case for the office of Judge of the Court of Appeals for District II. As defendants note, MCL 168.409a directs that a primary election is to be held for the office of Judge of the Court of Appeals on the Tuesday after the first Monday in August preceding the November general election. The Secretary of State makes a determination as to eligible judicial candidates by reviewing nominating petitions. *Id.* If, however, there are not

> twice the number of candidates as there are persons to be elected, then the secretary of state shall certify to the county board or boards of election commissioners the names of such candidates for court of appeals judge whose nominating petitions, filing fee or affidavit of candidacy have been properly filed, and such candidates shall be the nominees for judge of the court of appeals and shall be so certified. [MCL 168.409a.]

If there are not enough candidates to trigger a primary, then there is no primary election for the office of Court of Appeals judge. *Id.* And a candidate's nominating petitions are the key to accessing the November general election ballot if there is no primary election.

Returning to this case, it appears that there will be no primary election because there were not enough candidates to trigger a primary after the Board completed its review. And that would not change even plaintiff had been certified as a candidate, because her candidacy would not push the number of eligible candidates beyond the threshold needed for a primary election. Hence, the relief requested in the complaint—inclusion on the primary ballot—cannot issue. Nevertheless, and assuming that plaintiff seeks eligibility to appear on the ballot for the upcoming general election, we conclude that mandamus is not warranted on the existing record,[1] for the reasons discussed below.

---

[1] We do not take a position on whether plaintiff can seek relief directly from the Bureau of Elections to cure any challenged signatures given that no primary election exists for District II; despite repeated references in MCL 168.552 to resolving issues "before the primary election at which candidates are to be nominated," there is no mention of resolving petition sufficiency challenges when candidates are not required to appear on the primary ballot, i.e., who will only appear on the ballot for the general election in November.

III. ANALYSIS

To be entitled to the extraordinary remedy that is mandamus relief, plaintiff bears the burden to show that:

> (1) the plaintiff has a clear legal right to the performance of the duty sought to be compelled, (2) the defendant has a clear legal duty to perform such act, (3) the act is ministerial in nature such that it involves no discretion or judgment, and (4) the plaintiff has no other adequate legal or equitable remedy. [*Barrow v Detroit Election Comm*, 301 Mich App 404, 412; 836 NW2d 498 (2013).]

A "clear legal right" is a right that is "clearly founded in, or granted by, law; a right which is inferable as a matter of law from uncontroverted facts regardless of the difficulty of the legal question to be decided." *Rental Props Owners Ass'n of Kent Co v Kent Co Treasurer*, 308 Mich App 498, 519; 866 NW2d 817 (2014).

Plaintiff argues that the Board had a clear legal duty to declare that her nominating petitions were sufficient. Under MCL 168.552(11), "[a]n official declaration of the sufficiency or insufficiency of a nominating petition shall be made by the board of state canvassers not less than 60 days before the primary election at which candidates are to be nominated." The critical issue in this case is whether the Board had a clear legal duty to certify plaintiff's petitions. More particularly, the focus of the parties' briefing is on whether the Board had a clear legal duty to accept plaintiff's late submissions—that came after she was informed that no additional submissions would be accepted—and last-second attempts to cure the signatures that were invalidated. And on that issue, plaintiff has not provided any pertinent authority. Moreover, the Court has found no authority in support of the clear legal duty asserted by plaintiff.

MCL 168.552 describes the Board's duties with respect to nominating petitions. The statute "sets forth relatively detailed procedures for investigating and resolving complaints about nominating petitions, and it also sets the Board's duties with regard to qualifying petitions." *Johnson v Bd of State Canvassers*, 341 Mich App 671, 686; 991 NW2d 840 (2022) (quotation marks and internal citation omitted). In short, the Board's duty under the statute is to "determine whether the signatures on the petitions are valid, including those of the people who circulate the petitions, whether they are the signatures of registered voters, and whether there are sufficient valid signatures to certify the petitions." *Id*. (citation and quotation marks omitted).

The statute provides a few specifics as to how the Board is to undertake the above duty. MCL 168.552(8) provides in pertinent part that:

> Upon the receipt of the nominating petitions, the board of state canvassers shall canvass the petitions to ascertain if the petitions have been signed by the requisite number of qualified and registered electors. Subject to subsection (13), for the purpose of determining the validity of the signatures, the board of state canvassers *may cause a doubtful signature to be checked against the qualified voter file or the registration records by the clerk of a political subdivision in which the petitions were circulated. If the board of state canvassers receives a sworn complaint, in writing*, questioning the registration of or the genuineness of the signature of the

circulator or of a person signing a nominating petition filed with the secretary of state, *the board of state canvassers shall commence an investigation*. Subject to subsection (13), the board of state canvassers shall verify the registration or the genuineness of a signature as required by subsection (13). *If the board is unable to verify the genuineness of a signature on a petition, the board shall cause the petition to be forwarded to the proper city clerk or township clerk to compare the signatures on the petition with the signatures on the registration record, or in some other manner determine whether the signatures on the petition are valid and genuine.* The board of state canvassers is not required to act on a complaint respecting the validity and genuineness of signatures on a petition unless the complaint sets forth the specific signatures claimed to be invalid and the specific petition for which the complaint questions the validity and genuineness of the signature or the registration of the circulator, and unless the complaint is received by the board of state canvassers within 7 days after the deadline for filing the nominating petitions. [Emphasis added.]

As noted by this Court in *Johnson*, the Board's discretion to check doubtful signatures is subject to the requirements of MCL 168.552(13). That subsection provides, relevant to the complaint at hand, that: "The qualified voter file shall be used to determine the genuineness of a signature on a petition. Signature comparisons shall be made with the digitized signatures in the qualified voter file." MCL 168.552(13). In *Johnson*, this Court held that, while the Board has a clear legal duty to investigate under MCL 168.552, it does not have a duty to conduct that investigation as a candidate sees fit. *Johnson*, 341 Mich App at 689. That is, the Board has some discretion to decide how it will accept and verify signatures, aside from the statutory directives noted above. *Id*.

In addition, MCL 168.552(9) provides parameters for a hearing conducted by the Board. The statute declares that the Board "may hold a hearing upon a complaint filed or for a purpose considered necessary by the board of state canvassers to conduct an investigation of the petitions." *Id*. During such a hearing, the Board "may issue subpoenas and administer oaths." *Id*. And the Board may adjourn the hearing while it awaits "receipt of returns from investigations that are being made or for other necessary purposes . . . ." *Id*. The Board's ability to adjourn is limited, however, by the requirement that the Board "shall complete the canvass not less than 9 weeks before the primary election at which candidates are to be nominated." *Id*. Here, the 9-week deadline was June 4, 2024.

Returning to the instant case, plaintiff asks this Court to conclude that the Board had a clear legal duty under MCL 168.552 to consider the late affidavits that she tried to submit minutes before the meeting resumed on June 3. We disagree. MCL 168.552(9) gives the Board discretion in how it conducts a hearing on the validity of petitions and in how it resolves complaints about petitions. See *Johnson*, 341 Mich App at 686. There is nothing in the statute that requires the Board to consider each and every submission by a candidate, regardless of the time that the candidate submits the materials to the Board. Likewise, the statute authorizes the Board, in its discretion, to check "doubtful" signatures against the qualified voter file, as occurred here. MCL 168.552(8). See also *Johnson*, 341 Mich App at 687. The statute does not afford a candidate unlimited opportunities to rehabilitate "doubtful" signatures, however. Nor does the statute provide any indication of whether the Board must accept and review late submissions from candidates. Rather,

the same appears to fall within the discretion afforded to the Board, meaning that the legal duty plaintiff seeks to establish does not find support in the statute. Plaintiff cannot compel the Board to exercise its discretion in the manner she has suggested. See *Barrow v Wayne Co Bd of Canvassers*, 341 Mich App 473, 488; 991 NW2d 610 (2022) ("mandamus may lie to compel the exercise of discretion, but not to compel its exercise in a particular manner") (citation and quotation marks omitted).

Plaintiff's reply brief cites a portion of MCL 168.552(8) in support of her argument that the Board could have and should have considered her petitions by using notarized affidavits to rehabilitate invalidated signatures. As plaintiff points out, MCL 168.552(8) allows the Board to determine the genuineness of a signature by forwarding the petition to the pertinent city or township clerk to compare the signature with the voter's registration card, or to use "some other manner to determine whether the signatures on the petition are valid and genuine." Here, however, that section is of no help to plaintiff. The question is not *how* the Board can determine signature validity. Rather, the question involves the Board's duties and how the Board must conduct its review. As noted, on that issue, the statute leaves the same to the discretion of the Board. Plaintiff cannot use mandamus to compel the Board to exercise that discretion in the manner she desires. *Barrow*, 341 Mich App at 488.

Again, there can be no doubt that the Board has a duty to investigate signatures or to check signatures against the qualified voter file. MCL 168.552(8); MCL 168.552(13); *Johnson*, 341 Mich App at 688. However, that does not mean that the Board has a clear legal duty to conduct a review of plaintiff's choosing or one that adheres to the parameters she sets. Stated otherwise, the Board did not have a clear legal duty to accept and review the last-second submissions by plaintiff. Indeed, the submissions by plaintiff on the eve of the meeting would have required additional research and fact-finding by the Board and/or the Bureau of Elections. This could not have occurred during the five-minute interval between the submission of the final affidavits and the scheduled time for the meeting. Moreover, the statute demands that the Board finish its canvass at a specified time—in this case, June 4. See MCL 168.552(9). The Board could not continue to give plaintiff additional chances to remedy problems identified by the Bureau of Elections. Instead, the Board had discretion to determine when enough opportunities to rehabilitate signatures had been given, and when the process needed to be completed so that it could comply with its statutory duties in the time demanded by law.

The Court also notes that it is not even apparent that the affidavits were adequate to rehabilitate the signatures at issue. No determination was ever made about the same, and it appears likely that additional time was needed to review the materials. This is significant, because plaintiff has not only asked that the Board to be compelled to *review* the materials—which lacks merit in any event, for the reasons noted above—but she has asked that the Board be compelled to declare her petitions are sufficient. Where the facts are not clear—as they are not in this case given the unreviewed submissions—mandamus cannot lie. *Garner v Mich State Univ*, 185 Mich App 750, 762; 462 NW2d 832 (1990).

For similar reasons as those outlined above, the task that plaintiff seeks to compel is not ministerial in nature, either. Because the Board has discretion as to how to conduct its review of petition signatures and as to the procedure that it will employ, the act that plaintiff seeks to compel in this case is not ministerial. See *Johnson*, 341 Mich App at 689. See also *Hillsdale Co Sr Servs,*

*Inc v Hillsdale Co*, 494 Mich 46, 58 n 11; 832 NW2d 728 (2013) ("A ministerial act is one in which the law prescribes and defines the duty to be performed with such precision and certainty as to leave nothing to the exercise of discretion or judgment") (citation and quotation marks omitted).

## IV. CONCLUSION

The motion for immediate consideration is GRANTED. The complaint for writ of mandamus is DENIED because plaintiff has not demonstrated entitlement to relief.


/s/ Sima G. Patel
/s/ Christopher P. Yates
/s/ Kathleen A. Feeney