*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

WILLIAM MYRE and SHERI MYRE, Individually and as Personal Representatives of the ESTATE OF TM, CRAIG SHILLING and JILL SOAVE, Individually and as Personal Representatives of the ESTATE OF JS, CHAD GREGORY, Individually and as Next Friend of KG, MEGHAN GREGORY, LAUREN ALIANO, Individually and as Next Friend of SK and GK, LAURA LUCAS, Individually and as Next Friend of AS,

   Plaintiffs-Appellants,

v

PAM PARKER FINE, SHAWN HOPKINS, NICHOLAS EJAK, JACQUELINE KUBINA, BECKY MORGAN, ALLISON KARPINSKI, KIMBERLY POTTS, and OXFORD COMMUNITY SCHOOLS,

   Defendants-Appellees,

and

EC, JENNIFER CRUMBLEY, and JAMES CRUMBLEY,

   Defendants.

UNPUBLISHED
September 19, 2024

No. 366192
Oakland Circuit Court
LC No. 2022-192262-NO

Before: K. F. KELLY, P.J., and CAVANAGH and M. J. KELLY, JJ.

PER CURIAM.

In this tort action arising out of the Oxford High School shooting, plaintiffs appeal by right the trial court's order dismissing their claims against EC, Jennifer Crumbley, and James Crumbley (the "Crumbleys"). On appeal, plaintiffs challenge the trial court's earlier order granting summary

disposition in favor of defendants[1] on the basis of governmental immunity under the governmental tort liability act ("GTLA"), MCL 691.1401 *et seq*. Finding no errors warranting reversal, we affirm.

## I. BASIC FACTS AND PROCEDURAL HISTORY

This case arose from the school shooting that occurred at Oxford High School on November 30, 2021, when EC shot and killed four students, including TM and JS, and physically injured seven others. The extensive facts detailing the events leading up to and including the shooting are detailed in this Court's opinion in *People v Crumbley*, ___ Mich App ___, ___; ___ NW3d ___ (2023) (Docket Nos. 362210 and 362211); slip op at 2-11.

Plaintiffs filed the instant litigation approximately two months after the shooting. In plaintiffs' fourth amended complaint, as relevant here, plaintiffs accused defendants of negligence resulting in their injuries. Plaintiffs acknowledged the GTLA, but argued it was unconstitutional as applied in this case because it violated their right to equal protection of the laws under the Michigan Constitution. Alternatively, plaintiffs claimed the individual Oxford defendants were grossly negligent and the proximate cause of plaintiffs' injuries. Plaintiffs also asserted the individual Oxford defendants violated the Child Protection Law ("CPL"), MCL 722.621 *et seq*., by failing to report suspected neglect or abuse of EC, which warranted civil relief.

Defendants subsequently moved for summary disposition, arguing that the GTLA had repeatedly been held constitutional because the government's different treatment of public-school students and their families as compared to private-school students and their families was rationally related to a legitimate government interest. Further, defendants asserted no reasonable juror could conclude the individual Oxford defendants were *the* proximate cause of plaintiffs' injuries. Instead, EC was the proximate cause, meaning the individual Oxford defendants were entitled to immunity as a matter of law, including under the CPL.

The trial court ultimately agreed with defendants' positions and granted their motion for summary disposition. The court concluded the GTLA was constitutional as applied in this case and provided immunity to defendants. The trial court found that EC was *the* proximate cause of plaintiffs' injuries and no reasonable juror could determine otherwise. Moreover, in light of binding precedent from this Court, the trial court determined the GTLA applied to claims under the CPL. Therefore, because defendants were immune as a matter of law, the trial court granted summary disposition in their favor. After dismissing the remaining claims against the Crumbleys, this appeal followed.

---

[1] Because the Crumbleys are not parties to this appeal, we use the term "defendants" to refer to Pam Parker Fine, Shawn Hopkins, Nicholas Ejak, Jacqueline Kubina, Becky Morgan, Allison Karpinski, Kimberly Potts, and Oxford Community Schools ("OCS"). The "individual Oxford defendants" will refer to the people who were employed by OCS at the relevant time. In other words, "the individual Oxford defendants" will refer to all defendants involved in this appeal except OCS.

## II. STANDARDS OF REVIEW

The trial court considered and granted defendants' motion for summary disposition under MCR 2.116(C)(7). "We review de novo a circuit court's summary disposition decision." *Jackson v Southfield Neighborhood Revitalization Initiative*, ___ Mich App ___, ___; ___ NW2d ___ (2023) (Docket No. 361397); slip op at 24 (quotation marks and citation omitted). "Under MCR 2.116(C)(7), all well-pleaded allegations must be accepted as true and construed in favor of the nonmoving party, unless contradicted by any affidavits, depositions, admissions, or other documentary evidence submitted by the parties." *Cannon Twp v Rockford Pub Sch*, 311 Mich App 403, 414; 875 NW2d 242 (2015) (quotation marks and citation omitted). "If no facts are in dispute, and if reasonable minds could not differ regarding the legal effect of those facts, the question whether the claim is barred is an issue of law for the court." *Dextrom v Wexford Co*, 287 Mich App 406, 429; 789 NW2d 211 (2010). "However, if a question of fact exists to the extent that factual development could provide a basis for recovery, dismissal is inappropriate." *Id*.

"The application of governmental immunity is a question of law subject to de novo review." *Yoches v City of Dearborn*, 320 Mich App 461, 469; 904 NW2d 887 (2017). "Questions of statutory interpretation are reviewed de novo, as are constitutional issues." *Yopek v Brighton Airport Ass'n, Inc*, 343 Mich App 415, 422; 997 NW2d 481 (2022) (citations omitted).

## III. CONSTITUTIONALITY OF THE GTLA

Plaintiffs first argue the GTLA violated their right to equal protection of the laws secured by the Michigan Constitution. We disagree.

"The Equal Protection Clause requires that all persons similarly situated be treated alike under the law."[2] *Shepherd Montessori Ctr Milan v Ann Arbor Charter Twp*, 486 Mich 311, 318; 783 NW2d 695 (2010). "The essence of the Equal Protection Clauses is that the government not treat persons differently on account of certain, largely innate, characteristics that do not justify disparate treatment." *Pueblo v Haas*, 511 Mich 345, 368; 999 NW2d 433 (2023) (quotation marks and citation omitted). "To be considered similarly situated, the challenger and his comparators must be *prima facie* identical in all relevant respects or directly comparable in all material respects." *Lima Twp v Bateson*, 302 Mich App 483, 503; 838 NW2d 898 (2013) (quotation marks, citations, and alterations omitted).

When analyzing a claimed violation of the right to equal protection of the law, this Court must recognize "[t]he challenged legislation is cloaked in a presumption of constitutionality . . . ."

---

[2] Initially, it is important to note that, while plaintiffs only contend a violation of their rights under the Michigan Constitution, references to the United State Constitution and decisions of the United States Supreme Court are still applicable because our Supreme "Court has found Michigan's equal protection provision coextensive with the Equal Protection Clause of the federal constitution." *Crego v Coleman*, 463 Mich 248, 258; 615 NW2d 218 (2000). "The equal protection clauses of the Michigan and United States constitutions provide that no person shall be denied the equal protection of the law." *Lima Twp v Bateson*, 302 Mich App 483, 503; 838 NW2d 898 (2013) (quotation marks and citation omitted), citing US Const, Am XIV; Const 1963, art 1, § 2.

*Andary v USAA Cas Ins Co*, 512 Mich 207, 265; 1 NW3d 186 (2023). As specifically related to this case, "the governmental immunity act, codifying as it does an historic principle of law, enjoys more than the customary presumption of constitutional validity." *Smith v Dep't of Public Health*, 428 Mich 540, 611 n 22; 410 NW2d 749 (1987). "Courts examine three factors when determining whether a law violates the Equal Protection Clause: the character of the classification in question; the individual interests affected by the classification; and the governmental interests asserted in support of the classification." *Barrow v City of Detroit Election Comm*, 301 Mich App 404, 419; 836 NW2d 498 (2013) (quotation marks and citation omitted). "When evaluating an equal protection challenge to a provision, courts apply one of three traditional levels of review." *Barrow*, 301 Mich App at 419. "Those standards include strict scrutiny, intermediate scrutiny, and rational basis." *Id*. at 419 n 7.

Rational-basis review is described as "the default standard for social and economic legislation." *Andary*, 512 Mich at 268. "We have recognized that heightened scrutiny only applies when the statutory classification is based upon suspect factors, such as race, national origin, or ethnicity, or when the legislation that creates the classification impinges upon the exercise of a fundamental right." *Id*., citing *Phillips v Mirac, Inc*, 470 Mich 415, 432; 685 NW2d 174 (2004). "Under [the rational-basis] test, a statute is constitutional if it furthers a legitimate governmental interest and if the challenged statute is rationally related to achieving that interest." *Barrow*, 301 Mich App at 419-420. In other words, "a legislative classification must be sustained, if the classification itself is rationally related to a legitimate governmental interest." *Andary*, 512 Mich at 265. Given the presumption of constitutionality, "the challenger has the burden to rebut that presumption." *Barrow*, 301 Mich App at 419.

In the present case, plaintiffs contend they are being treated differently because they are public-school students or the family of such students. Plaintiffs assert that they are similarly situated to private-school students and families of those students, but the private-school students would not be hampered by the GTLA if they were injured while at school as a result of negligence by a staff member. Plaintiffs insist this factual situation alone is enough evidence to warrant finding the GTLA unconstitutional with respect to this case. Defendants, on the other hand, argue plaintiffs ignored relevant caselaw about analyzing whether the differing treatment of public schools and private schools had a rational relation to a legitimate governmental interest.

Plaintiffs' argument is premised on the idea that this Court must follow the plain language of the Equal Protection Clause of the Michigan Constitution, which states, in relevant part, that "[n]o person shall be denied the equal protection of the laws[.]" Const 1963, art 1, § 2. "Our primary goal in construing a constitutional provision is to give effect to the intent of the people of the state of Michigan who ratified the Constitution, by applying the rule of common understanding." *Mothering Justice v Attorney General*, 345 Mich App 282, 295; 5 NW3d 54 (2023) (quotation marks and citation omitted). "Under the rule of common understanding, this Court 'determin[es] the plain meaning of the text as it was understood at the time of ratification.' " *Id*., quoting *Mich Coalition of State Employee Unions v Michigan*, 498 Mich 312, 323; 870 NW2d 275 (2015) (alteration in *Mothering Justice*).

Plaintiffs insist the analysis of this issue begins and ends with the constitutional language just quoted. Because plaintiffs are being denied the "equal protection of the laws" on the basis of application of the GTLA, plaintiffs assert the GTLA must be held not to apply in this case.

-4-

Plaintiff's argument, however, ignores the fact that this provision of the Michigan Constitution, as with many others, has previously been interpreted in a binding nature by other appellate courts. Simply put, when analyzing equal-protection claims, the Michigan Supreme Court and this Court have applied the rational-basis test when the purportedly aggrieved parties are not part of a suspect classification nor arguing the violation of a fundamental right. *Andary*, 512 Mich at 268; *Barrow*, 301 Mich App at 419-420. We are bound by those decisions. See *Estate of Pearce v Eaton Co Rd Comm*, 507 Mich 183, 195; 968 NW2d 323 (2021) ("[T]he Court of Appeals is bound to follow decisions by this Court except where those decisions have clearly been overruled or superseded . . . .") (quotation marks and citation omitted); see also MCR 7.215(C)(2) ("A published opinion of the Court of Appeals has precedential effect under the rule of stare decisis.").

In this case, plaintiffs have identified their class as public-school students and their families, which is not a suspect class. See *Sheardown v Guastella*, 324 Mich App 251, 258; 920 NW2d 172 (2018) (quotation marks and citation omitted) ("The most heightened review, strict scrutiny, applies when the provision interferes with a fundamental right or classifies based on factors that are suspect, such as race, national origin, or ethnicity."). Public-school students and their families also are not entitled to intermediate scrutiny. See *Crego*, 463 Mich at 260 ("This 'heightened scrutiny' standard has been applied to legislation creating classifications on such bases as illegitimacy and gender."). The right that plaintiffs allege has been interfered with is the right to sue school officials under traditional negligence principles. They have provided no caselaw, nor is there any, suggesting such a right is fundamental, the denial of which would warrant strict scrutiny. *Barrow*, 301 Mich App at 419-420.

In passing, plaintiffs assert the GTLA, in effect, has interfered with their right to a trial by jury under the Michigan Constitution. "The right of trial by jury shall remain, but shall be waived in all civil cases unless demanded by one of the parties in the manner prescribed by law." 1963 Const, art 1, § 14. Despite plaintiffs demanding a jury trial when filing their complaint, plaintiffs are incorrect about their constitutional right to such being implicated by application of the GTLA. The Michigan Supreme Court has held "that the right of trial by jury encompassed a jury that could find facts . . . ." *Phillips*, 470 Mich at 427-428. "However, regarding the law, it was for the court to decide that on the basis of the common law, the Constitution, or the statutes the Legislature had enacted." *Id*. at 428. "The application of governmental immunity is a question of law . . . ." *Yoches*, 320 Mich App at 469. Therefore, application of the GTLA to immunize defendants, as governmental officials, is a legal issue, which did not implicate plaintiffs' jury-trial rights. *Phillips*, 470 Mich at 427-428; *Yoches*, 320 Mich App at 469. As a result, to the extent plaintiffs argued the GTLA, as applied in this case, violated their fundamental right to a trial by jury, the argument fails.

In sum, when analyzing whether the application of the GTLA violated plaintiffs' rights to equal protection of the laws, the rational-basis test applies. *Andary*, 512 Mich at 268. In such cases, the relevant law is presumed to be constitutional and the party challenging it bears the burden of proving otherwise by showing it has no rational relation to a legitimate governmental purpose. *Barrow*, 301 Mich App at 419. Because plaintiffs incorrectly believe the rational-basis test does not apply in this case, they have not made any effort to argue or prove there are grounds to overcome the presumption of constitutionality. *Id*. As a result, their claims must fail.

In light of this conclusion, any challenge to summary disposition of plaintiffs' claims against OCS must fail. "It is well established that governmental immunity is not an affirmative defense, but is instead a characteristic of government." *West v Dep't of Nat'l Resources*, 333 Mich App 186, 191; 963 NW2d 602 (2020) (quotation marks and citation omitted). "In order to assert a viable claim against a governmental agency, a plaintiff must plead facts establishing that an exception to governmental immunity applies to his or her claim." *Wood v Detroit*, 323 Mich App 416, 420; 917 NW2d 709 (2018). Plaintiffs openly acknowledge they have not pleaded an exception to the GTLA with respect to OCS, a governmental agency. Instead, they rely on the GTLA being held unconstitutional as applied in this case for their claims against OCS to survive. Because the GTLA is constitutional as applied in this case, the trial court properly concluded OCS was entitled to absolute governmental immunity. *Wood*, 323 Mich App at 420.

## IV. IMMUNITY FOR THE INDIVIDUAL OXFORD DEFENDANTS

Next, plaintiffs argue the trial court erred when it granted defendants' motion for summary disposition on the basis of governmental immunity because there were genuine issues of material fact that remained. We disagree.

"The purpose of the GTLA is to limit governmental tort liability." *Farris v McKaig*, 324 Mich App 349, 353; 920 NW2d 377 (2018). As relevant here, "MCL 691.1407(2) provides immunity for government employees[.]" *Wood*, 323 Mich at 423. Under the state's governmental immunity, "governmental employees are generally immune from tort liability when they are engaged in the exercise or discharge of a governmental function." *Dougherty v City of Detroit*, 340 Mich App 339, 345; 986 NW2d 467 (2021) (quotation marks and citation omitted). MCL 691.1407(2) states:

> (2) Except as otherwise provided in this section, and without regard to the discretionary or ministerial nature of the conduct in question, each officer and employee of a governmental agency, each volunteer acting on behalf of a governmental agency, and each member of a board, council, commission, or statutorily created task force of a governmental agency is immune from tort liability for an injury to a person or damage to property caused by the officer, employee, or member while in the course of employment or service or caused by the volunteer while acting on behalf of a governmental agency if all of the following are met:
>
> > (a) The officer, employee, member, or volunteer is acting or reasonably believes he or she is acting within the scope of his or her authority.
> >
> > (b) The governmental agency is engaged in the exercise or discharge of a governmental function.
> >
> > (c) The officer's, employee's, member's, or volunteer's conduct does not amount to gross negligence that is *the proximate cause* of the injury or damage. [Emphasis added.]

The dispute in the trial court and on appeal relates solely to MCL 691.1407(2)(c), as the trial court decided the motion for summary disposition after determining no reasonable juror could conclude the individual Oxford defendants were "the proximate cause of" plaintiffs' injuries. *Id.*

Plaintiffs argue the decision was incorrect because there remained a question of fact for a jury to decide regarding proximate causation. Defendants insist EC was the proximate cause of plaintiffs' injuries, not the individual Oxford defendants, which required summary disposition under MCL 691.1407(2). "[P]roximate cause considers whether the harm caused to the plaintiff was the general kind of harm the defendant negligently risked." *Nathan v David Leader Mgmt*, 342 Mich App 507, 522-523; 995 NW2d 567 (2022). In other words, a decision regarding proximate cause "requires a determination of whether it was foreseeable that the defendant's conduct could result in harm to the victim." *Ray*, 501 Mich at 65. "[S]o long as the defendant is a factual cause of the plaintiff's injuries, then the court should address legal causation by assessing foreseeability and whether the defendant's conduct was the proximate cause." *Dougherty*, 340 Mich App at 353 (quotation marks and citation omitted; alteration in original).

"It is not uncommon that more than one proximate cause contributes to an injury." *Ray*, 501 Mich at 65. "However, under the GTLA, we have held that when assessing whether a governmental employee was 'the proximate cause' of the plaintiff's injuries, a court must determine whether the defendant's conduct was 'the one most immediate, efficient, and direct cause of the injury . . . .' " *Id.*, quoting *Robinson v Detroit*, 462 Mich 439, 462; 613 NW2d 307 (2000). "Determining proximate cause under the GTLA, or elsewhere, does not entail the weighing of factual causes but instead assesses the legal responsibility of the actors involved." *Ray*, 501 Mich at 71-72. However, "one's conduct cannot be the proximate cause without also being a factual cause." *Id.* at 73. "[S]o long as the defendant is a factual cause of the plaintiff's injuries, then the court should address legal causation by assessing foreseeability and whether the defendant's conduct was the proximate cause." *Id.* at 74. "This would require considering defendant's actions alongside any other potential proximate causes to determine whether defendant's actions were, or could have been, the one most immediate, efficient, and direct cause of the injuries." *Id.* at 76 (quotation marks and citation omitted).

There is no dispute by the parties that the individual Oxford defendants are factual causes of plaintiffs' injuries. Instead, the dispute focuses on whether the individual Oxford defendants were *the* proximate cause of plaintiffs' injuries. EC's teachers each observed some concerning behavior by EC and reported it to the administrators at the school who were supposed to handle such things. When the shooting occurred, the teachers followed protocols and protected the students they could. The other group of the individual Oxford defendants are the administrators, who knew, or had an avenue to learn, about all of EC's concerning behavior and drawings. Despite being aware of the issues, none of them asked EC if he had a gun or access to any weapon with which he might hurt himself or others and did not search EC's belongings. And although no longer parties to this appeal, Jennifer and James were also factual causes of the injuries alleged in the present case.

The last factual cause to consider is EC. Simply stated, EC shot and killed TM and JS. Plaintiffs argue EC should not be considered a factual cause when considering who was the proximate cause under the standard clarified in *Ray*, 501 Mich at 72-73. In support of this argument, plaintiffs cite the following language from *Ray*: "Further, before an actor can be a

-7-

proximate cause, there must be the prerequisite determination that the actor was negligent—that is, that the actor breached a duty." *Id*. at 74. In other words, plaintiffs argue that EC was not negligent, rather he acted intentionally and with malice, and governmental immunity does not apply.

But in the context of the case, the statement is clearly obiter dictum.[3] The Court in *Ray*, 501 Mich at 59-60, was solely considering allegedly negligent parties. There was no claim that anyone purportedly liable for the injuries in *Ray* acted intentionally. *Id*. Simply stated, the *Ray* Court was not being asked to decide if an intentional actor can qualify as the proximate cause of injuries. *Id*. Therefore, the Court did not have reason to precisely word the above-quoted statement, but had it done so, it might have instead stated, "before an actor can be a proximate cause, there must be the prerequisite determination that the actor was [at least] negligent—that is, that the actor breached a duty." *Id*. at 74. Indeed, the Court in *Ray* affirmed its previous decision in *Robinson*, which held the proximate cause of the injuries in that case was not the governmental actor's alleged gross negligence, but "the reckless conduct of the drivers of the fleeing vehicles." *Robinson*, 462 Mich at 462.[4] In other words, the Court concluded reckless actions can be considered the proximate cause of an injury, not just negligent actions. *Id*. Moreover, when analyzing *Ray* in a published opinion, this Court stated the relevant holding was to compare all "factual causes," not just negligent factual causes. *Dougherty*, 340 Mich App at 353.

As summarized above, the individual Oxford defendants had varying knowledge about EC. Jennifer and James had all of that same knowledge, plus additional information about EC's mental-health issues, that they recently purchased a gun for him, and the guns were not safely stored. Ultimately, though, EC was the person who decided to take a gun to school, causing TM's and JS's deaths. Indeed, while sworn under oath, EC admitted he made the decision to conduct the school shooting with premeditation and deliberation. While the individual Oxford defendants had some signs EC might be a danger to himself or others, and Jennifer and James had even more signs of such, it is simply outside the realm of possibility that a reasonable juror could conclude anyone but EC was "the one most immediate, efficient, and direct cause, of the [plaintiffs'] injuries." *Robinson*, 462 Mich at 446. Because the trial court properly determined no reasonable juror could conclude anyone but EC was the proximate cause of plaintiffs' injuries, summary disposition in favor of the individual Oxford defendants was properly granted. *Id*.; *Robinson*, 462 Mich at 446.

In an attempt to escape this conclusion, plaintiffs contend the trial court erred because it failed to account for EC's age, as required by *Ray*. Indeed, in *Ray*, one of the factual causes at issue, the plaintiff, was a 13-year-old child. *Ray*, 501 Mich at 75. In light of the plaintiff's age, the Supreme Court noted that, "[u]nlike adults, who are held to the reasonable person standard,

---

[3] "Obiter dicta are not binding precedent. Instead, they are statements that are unnecessary to determine the case at hand and, thus, lack the force of an adjudication." *Secura Ins Co v Stamp*, 341 Mich App 574, 585 n 9; 991 NW2d 244 (2022).

[4] In an alternative argument, plaintiffs suggest we should overturn or express disagreement with *Robinson*. We have no authority to do so. *Estate of Pearce*, 507 Mich at 195 ("[T]he Court of Appeals is bound to follow decisions by this Court except where those decisions have clearly been overruled or superseded . . . .") (quotation marks and citation omitted).

determining whether a child was negligent requires application of a subjective standard." *Id*. "The court must assess whether the child acted with the degree of care that would reasonably be expected of a child of similar age, intelligence, capacity, and experience under the circumstances of the case." *Id*. The difference between this case and *Ray*, though, is that the child in *Ray* decided to run across the street against the "Do Not Walk" signal, a potentially negligent decision, while EC deliberately decided to commit a school shooting with premeditation and malice. See *id*. at 59-60. Although it is important to consider the plaintiff's age in *Ray*, given that "a boy 12 [or 13] years old, of ordinary intelligence for his age, is more venturesome and, therefore, not as cautious as a man in the face of danger," *Clemens v Sault Ste Marie*, 289 Mich 254, 257; 286 NW 232 (1939); the same simply does not apply in this case. In short, while a child's age can be considered relevant when discussing ordinary negligence, there is nothing in this record to suggest a reasonable 15-year-old would decide to commit a school shooting under the circumstances presented. Therefore, this argument lacks merit. *Ray*, 501 Mich at 75.

Plaintiffs final argument about proximate causation involves the *Ray* and *Crumbley* opinions. Pertinently, plaintiffs assert the Court's decision in *Ray* required the question of who was the proximate cause to be submitted to the jury. As for *Crumbley*, plaintiffs contend this Court's opinion reveals there can be proximate causes of plaintiffs' injuries other than EC, resulting in a fact question to be decided by a jury. Each argument lacks merit for reasons specifically stated in those opinions. While the Court in *Ray* acknowledged causation is generally a question of fact for the jury, it also reiterated that, "[i]f, on the basis of the evidence presented, reasonable minds could not differ on [who was the proximate cause], then the motion for summary disposition should be granted." *Ray*, 501 Mich at 76. As discussed above, the evidence presented in this case shows a reasonable juror could only ever conclude EC was the proximate cause of plaintiffs' injuries, meaning the trial court did not err in declining to submit the case to the jury. *Id*. Further, in *Crumbley*, ___ Mich App at ___; slip op at 13, this Court was clear it was considering whether Jennifer and James could be *a* proximate cause of the deaths of TM and JS, not *the* proximate cause. As plaintiffs point out in their argument about the constitutionality of the GTLA as applied in this case, if they were only required to prove the individual Oxford defendants were a proximate cause of plaintiffs' injuries, the analysis would be much more favorable to them. Simply stated, this Court's conclusion Jennifer and James could be considered *a*—but not *the*—proximate cause of plaintiffs' injuries is unhelpful to plaintiffs' claims in this case.[5] *Id*.

## V. THE CHILD PROTECTION LAW AND THE GTLA

---

[5] In light of this conclusion, we decline to consider defendants' claim of an alternative ground for affirmance on the basis of there being no genuine issue of material fact that the individual Oxford defendants were not grossly negligent because it is moot. See *TM v MZ*, 501 Mich 312, 317; 916 NW2d 473 (2018) (quotation marks and citation omitted) (holding that a case is moot when "[i]t involves a case in which a judgment cannot have any practical legal effect upon a then existing controversy," and that, "[a]s a general rule, this Court will not entertain moot issues or decide moot cases").

Plaintiffs also argue the trial court erred by applying governmental immunity to a claim under the CPL, warranting reversal of the trial court's summary disposal of those claims. We disagree.

"The CPL deals with cases of neglect or abuse." *In re CADP*, 341 Mich App 370, 394; 990 NW2d 386 (2022). More specifically, "the purpose of the [CPL] is to protect abused and neglected children." *Becker-Witt v Bd of Examiners of Social Workers*, 256 Mich App 359, 364; 663 NW2d 514 (2003). Under MCL 722.623(1)(a), a "school administrator, school counselor or teacher" is "required to report . . . suspected child abuse or child neglect" to "centralized intake by telephone, or, if available, through the online reporting system," when they have "reasonable cause to suspect child abuse or child neglect . . . ." The CPL discusses criminal liability, civil liability, and immunity with respect to mandated reporters as summarized by this Court in the following manner:

> (1) a person who knowingly fails to report when required to do so incurs criminal liability; (2) a person who fails to report when required to do so incurs civil liability; (3) a person who reports in good faith is immune from any civil or criminal liability that might otherwise be incurred as a result of that action. [*Lee v Detroit Med Ctr*, 285 Mich App 51, 63-64; 775 NW2d 326 (2009).]

For purposes of this appeal, it is not disputed that all of the individual Oxford defendants are mandated reporters under MCL 722.623(1)(a), and there were no reports made under the statute. Defendants' arguments do not focus on whether there was suspected neglect or abuse of EC, but instead focus on whether they are entitled to immunity under the GTLA regardless of whether they may have violated MCL 722.623(1)(a). This dispute centers on this Court's decision in *Jones v Bitner*, 300 Mich App 65, 68; 832 NW2d 426 (2013), in which this Court considered whether the CPL "abrogate[d] the governmental immunity statute" with respect to mandatory reporters. The case dealt with a lawsuit against the defendant, a police officer, who was a mandated reporter. *Id*. at 73. The defendant was accused of violating the CPL after a minor child died by consuming morphine kept in the home by the child's mother. *Id*. at 68-69. The plaintiff, the representative of the decedent's estate, sued the defendant because the defendant had become aware the child's mother kept morphine in her home with the decedent but did not report the alleged abuse or neglect as required under the CPL. *Id*. at 68-70.

On appeal, this Court considered whether the GTLA provided immunity to the defendant under the circumstances. *Id*. at 68. "We conclude that the mandatory reporting provision of the [CPL], MCL 722.623, does not abrogate the governmental immunity statute, MCL 691.1407. While the mandatory reporting provision imposes liability when an individual named in the statute fails to report suspected abuse or neglect, that liability is limited by governmental immunity." *Jones*, 300 Mich App at 68. When analyzing why, this Court noted the Legislature amended the CPL several times after the GTLA was amended to provide immunity to individual governmental actors, yet never added a provision "to clearly provide that it abrogates the later-enacted governmental immunity statute." *Id*. at 77. Given this decision by the Legislature, this Court held that "[t]he mandatory reporting statute must be read in conjunction with, and is therefore limited by, the governmental immunity statute." *Id*. "It follows that, in order for [the] defendant to be liable under the mandatory reporting statute, her conduct must have been grossly negligent and *the* proximate cause of [the decedent]'s death." *Id*.

-10-

On the basis of *Jones*, 300 Mich App at 77, the trial court correctly determined the individual Oxford defendants were entitled to governmental immunity under the GTLA. According to MCR 7.215(C)(2), we are bound by that decision. As a result, the *Jones* decision remains good law and is binding on us. MCR 7.215(C)(2). Further, as explained in greater depth above, plaintiffs' claims against the individual Oxford defendants fail because no reasonable juror could conclude they were *the* proximate cause of plaintiffs' injuries. MCL 691.1407(2). Consequently, the individual Oxford defendants are immune from plaintiffs' claims under the CPL because of immunity granted to them by law under the GTLA.

In an attempt to escape this conclusion, plaintiffs urge us to express disagreement with *Jones* under MCR 7.215(J)(2), and convene a conflict panel under subrule (J)(3). The only reason plaintiffs suggest this Court do so is because they believe *Jones* ran "afoul of [the] principles of statutory interpretation." Regardless of plaintiffs' beliefs, the *Jones* panel specifically indicated it was considering and applying the plain language of the two statutory schemes, primarily relying on the lack of an exception to the GTLA in the CPL. *Jones*, 300 Mich App at 76-77 ("The Legislature is presumed to be aware of the consequences of its use or omission of statutory language and the effect of new laws on all existing laws."). This was important because, while the Legislature is allowed to pass other exceptions to the GTLA, like it did in the Civil Rights Act (CRA), MCL 37.2101 *et seq*., it did not do so in the CPL. See *In re Bradley Estate*, 494 Mich 367, 393 n 60; 835 NW2d 545 (2013) (holding the Legislature "expressly waiv[ed] governmental immunity" in the CRA). Because of the lack of a similar express waiver of immunity in the CPL, this Court properly constructed the statutory scheme to be limited by the GTLA. *Id*.

Moreover, even if we did believe *Jones* was wrongly decided, this would not be the appropriate case to address it. As noted by defendants, although for the first time on appeal, the CPL civil-liability provision does not provide any avenue of relief to plaintiffs on the basis of other binding caselaw. Pertinently, in *Marcelletti v Bathani*, 198 Mich App 655, 659; 500 NW2d 124 (1993), this Court held "the Legislature intended that liability under the statute be limited to claims for damages by the identified abused child about whom no report was made[.]" In other words, civil liability under MCL 722.633(1) is only available to the child who had been abused or neglected, not other people harmed by that child. With respect to this case, only EC would have a potential claim against the individual Oxford defendants under the CPL, but he is not a plaintiff in this case. *Marcelletti*, 198 Mich App at 659. Therefore, even if we thought *Jones* was wrongly decided, this would not be the proper case to revisit it because plaintiffs' claims against the individual Oxford defendants under the CPL would fail anyway in light of this Court's binding decision in *Marcelletti*. As a result, summary disposition would still be warranted under *Marcelletti* even if a conflict panel eventually set aside *Jones*. Consequently, we decline to do so.

## VI. PREMATURITY OF SUMMARY DISPOSITION

Lastly, plaintiffs argue summary disposition under MCR 2.116(C)(7) was premature because the trial court erroneously denied their request for additional time for discovery and for leave to provide supplemental briefing. We disagree.

As noted above, it is true that a trial court, when determining a motion under subrule (C)(7), must consider "[t]he affidavits, together with the pleadings, depositions, admissions, and documentary evidence then filed in the action or submitted by the parties . . . ." MCR 2.116(G)(5).

Because of the ability to present evidence with a motion for summary disposition under (C)(7), "[g]enerally, a grant of summary disposition is premature before discovery on a disputed issue is complete." *Doe v Gen Motors*, 511 Mich 1038, 1038-1039 (2023). "However, a party may not simply allege that summary disposition is premature. The party must clearly identify the disputed issue for which it asserts discovery must be conducted and support the issue with independent evidence." *Powell-Murphy v Revitalizing Auto Communities Environmental Response Trust*, 333 Mich App 234, 253; 964 NW2d 50 (2020). "The dispositive inquiry is whether further discovery presents a fair likelihood of uncovering factual support for the party's position." *Id.* (quotation marks and citation omitted).

In the present case, defendants filed their final motion for summary disposition on September 7, 2022. To it, they attached the preliminary examination transcripts from the criminal case against Jennifer and James, along with documentary evidence showing James purchased the handgun ultimately used to commit the school shooting by EC. Plaintiffs responded on October 26, 2022. They also attached the preliminary examination transcripts, but added documentary evidence of EC's drawings on the math worksheet, OCS's suicide-intervention policy, a news article about OCS refusing to allow an independent investigation after the shooting, the posting from the OCS website documenting concerns about potential violence in the schools, and some data regarding the increasing occurrences of school shootings in the United States. Defendants filed a reply brief on November 16, 2022. They attached the depositions of Ejak, Hopkins, Karpinski, Kubina, Morgan, and Fine to their reply brief.

At the hearing regarding summary disposition held on February 1, 2023, plaintiffs expressed concern about what evidence the trial court would consider, noting plaintiffs had conducted additional depositions during the interceding months. Plaintiffs contended they had been unable to inform the trial court about all of the information available to the individual Oxford defendants before the shooting occurred. In an apparent attempt to assuage plaintiffs' concerns, the trial court stated, "I'm respectfully not going to hear facts that are not in the filings as of September [2022]; that's what's properly before the Court today." However, when the hearing began, the trial court repeatedly stated it had read "everything" that had been filed in the case, which necessarily would have included the depositions attached to defendants' reply brief. The trial court did not attempt to explain its apparently disparate statements.

On appeal, plaintiffs make two distinctive arguments. The first is that the trial court erred by not considering all of the documentary evidence available at the time it decided defendants' motion for summary disposition. Plaintiffs insist this was a violation of MCR 2.116(G)(5), which in relevant part states: "The affidavits, together with the pleadings, depositions, admissions, and documentary evidence then filed in the action or submitted by the parties, *must be considered* by the court when the motion is based on subrule (C)(1)-(7) or (10)." (Emphasis added.) Plaintiffs focus on the italicized language from the court rule, while ignoring the language that defeats their claims. The trial court is required to consider all documentary evidence "then filed in the action or submitted by the parties . . . ." MCR 2.116(G)(5). Plaintiffs openly acknowledge they had not filed the additional evidence with the trial court at the time it decided defendants' motion for summary disposition under subrule (C)(7). Therefore, under MCR 2.116(G)(5), the trial court was not required to consider that evidence.

Plaintiffs' second argument relates to the premature nature of the record with respect to the grant of summary disposition in favor of the individual Oxford defendants. Plaintiffs noted the trial court relied on their inability to prove the individual Oxford defendants' actions were the proximate cause of plaintiffs' injuries to avoid the application of governmental immunity. Plaintiffs insist they could have proven such if they were allowed to conduct and produce additional documentary evidence. Plaintiffs are incorrect, as is clear from the analysis above regarding EC being the proximate cause of plaintiffs' injuries.

Recall that plaintiffs are not permitted to merely call the record premature and be entitled to a reversal of the summary-disposition order. Instead, they must "clearly identify the disputed issue for which [they assert] discovery must be conducted and support the issue with independent evidence." *Powell-Murphy*, 333 Mich App at 253. Plaintiffs have failed to meet this burden. While plaintiffs identified proximate causation as the relevant issue, they have not shown how additional discovery would have changed the result. Instead, they attempt to obfuscate by misinterpreting the trial court's order as concluding there was no genuine issue of material fact about whether the individual Oxford defendants were *a* proximate cause of plaintiffs' injuries. Then, in plaintiffs' attempt to defeat this alleged holding of the trial court, they cite to *Crumbley*, ___ Mich App at ___; slip op at 14-16, in which this Court reasoned either Jennifer or James could be considered a proximate cause of the deaths of TM and JS.

Even a cursory reading of the trial court's decision reveals the falsity of this argument. The trial court concluded there was no genuine issue of material fact regarding whether the individual Oxford defendants were *the* proximate cause of plaintiffs' injuries. Unlike this Court's decision in *Crumbley*, it was not enough for plaintiffs to present evidence that the individual Oxford defendants were a proximate cause of plaintiffs' injuries. Therefore, the caselaw is not helpful to plaintiffs in this civil lawsuit implicating the GTLA.

Ultimately, plaintiffs have not identified any evidence that would support their claim the individual Oxford defendants were the proximate cause of plaintiffs' injuries instead of EC. Indeed, because all of the individual Oxford defendants' actions or inactions are being challenged because they ultimately allowed EC to commit a mass shooting inside Oxford High School, there cannot be any such evidence that exists. Regardless of what the individual Oxford defendants did or did not do, EC still made the definite and premeditated decision to commit the school shooting, and no amount of additional discovery can change that fact. As a result, summary disposition was properly granted despite all of the discovery not yet being provided to the trial court. *Powell-Murphy*, 333 Mich App at 253.

Affirmed. Defendants, as the prevailing parties, may tax costs. MCR 7.219(A).

/s/ Kirsten Frank Kelly
/s/ Mark J. Cavanagh
/s/ Michael J. Kelly

-13-